UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN ROBERT DEMOS, JR.,<br><br>               Plaintiff,<br><br>     v.<br><br>DAVID POLI, *et al*.,<br><br>               Defendants. | CASE NO. 2:24-cv-01731-RSL<br><br>ORDER OF DISMISSAL |

This matter comes before the Court on the Report and Recommendation of the Honorable Brian A. Tsuchida, United States Magistrate Judge, (Dkt. # 3) and plaintiff's "Motion to Strike And Or Quash the R&R" (Dkt. # 4 at 8). Judge Tsuchida recommends dismissing plaintiff's proposed complaint with prejudice because (a) plaintiff has had more than three prior actions dismissed as frivolous, malicious, or for failure to state a claim and he has not plausibly alleged that he faces imminent danger of serious physical injury and (b) he has not filed an affidavit certifying that his current claims have not been presented in any other court action and that he will produce evidence to support the claims. Plaintiff filed two sets of objections, and the Court addresses his arguments below.

**A. Magistrate Judge Authority and Procedures**

    **1. Lack of Consent**

Plaintiff suggests that the Report and Recommendation is unlawful and/or without force because he never consented to having his case heard by a Magistrate Judge. Pursuant

to 28 U.S.C. § 636(b), a Magistrate Judge may hear and decide non-dispositive, pretrial matters (subsection (b)(1)(A)) and may hear and make recommendations regarding dispositive matters (subsections (b)(1)(B) and (C)). Consent of the parties is necessary only when the Magistrate Judge handles an entire case, conducting all proceedings and entering judgment under his or her own signature. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(a). Because this matter proceeded under § 636(b)(1)(B) and (C), plaintiff's consent was not necessary.

**2. Noting Date**

Plaintiff argues that the Report and Recommendation was improperly noted for consideration by the undersigned on the same day it was docketed. Plaintiff is correct. Pursuant to 28 U.S.C. § 636(b)(1), parties have fourteen days after being served with a copy of the Magistrate Judge's findings and recommendations to file written objections. *See also* Fed. R. Civ. P. 72(b). The Court therefore held the Report and Recommendation until plaintiff had an opportunity to object or fourteen days passed, whichever occurred first. Both of plaintiff's objections have been considered and, as required by § 63(b)(1) and Rule 72(b)(3), the Court has evaluated *de novo* those aspects of the Report and Recommendation to which an objection was raised.

**B. Prison Litigation Reform Act ("PLRA")**

Enacted in 1996, the PLRA imposes specific filing requirements on prisoners seeking to file civil actions *in forma pauperis*, see 28 U.S.C. § 1915, and prisoners seeking to file civil actions regarding prison conditions, see 42 U.S.C. § 1997e. Specifically, the law:

> restricted the ability of prisoners to avail themselves of IFP status when filing certain federal lawsuits. [Section] 1915(g) contains the PLRA's "three-strikes" rule. This provision bars prisoners from proceeding IFP if they have accrued "three strikes" under the statute:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

> Although the legislative history of the PLRA is meager, the Act's supporters indicated that it was meant to curb the volume of non-meritorious, and often frivolous, civil-rights lawsuits brought challenging prison conditions. . . . The PLRA also contains other provisions designed to limit the number of such suits in federal courts. For example, it contains an administrative-exhaustion requirement to ensure that prisoners make use of prison grievance procedures. 42 U.S.C. § 1997e(a). In addition, the PLRA requires that courts screen prisoner complaints and dismiss them *sua sponte* if they determine then, or later in the proceedings, that the complaints are "frivolous, malicious, or fail[ ] to state a claim." 28 U.S.C. § 1915A.

*Washington v. Los Angeles Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1054 (9th Cir. 2016) (citation omitted).

### 1. Constitutionality

Plaintiff argues that 28 U.S.C. § 1915(g) is unconstitutional because it deprives him of meaningful access to the courts. Although Section 1915(g) obviously and intentionally curtails access to the courts in some circumstances, the three-strikes rule has been held constitutional. *See, e.g., Gilmore v. People of the State of Cal.*, 220 F.3d 987, 1008 (9th Cir. 2000).

> Section 1915(g) does not prohibit prisoners from accessing the courts to protect their rights. Inmates are still able to file claims - they are only required to pay for filing those claims. In reaching our conclusion, we recognize that some prisoners may be unable to prepay filing fees, and will thereby be unable to bring their actions immediately. However, non-prisoners face similar concerns. Some prisoners will be required to save money in order to prepay a filing fee and bring a claim. Again, non-prisoners face that same situation. Section 1915(g) does require prisoners to be fiscally responsible and make decisions concerning the merits of their case. If

ORDER OF DISMISSAL - 3

> inmates are unwilling to save their money and prepay filing fees, such a decision may be a good indicator of the merits of the case. Courts would be well served by prisoners making such a decision before filing claims. Moreover, § 1915(g) does not prevent all prisoners from accessing the courts; it only precludes prisoners with a history of abusing the legal system from continuing to abuse it while enjoying IFP status. Although prisoners are entitled to meaningful access to the courts, courts are not obliged to be a playground where prisoners with nothing better to do continuously file frivolous claims. Only after demonstrating an inability to function within the judicial system is an indigent inmate asked to pay for access to the courts.
>
> Finally, we note that IFP status is not a constitutional right. Congress created IFP status to assist indigent persons in bringing legitimate claims in the late 1800s. As a congressionally created benefit, IFP status is not constitutionally mandated and can be extended or limited by Congress. As the Eleventh Circuit held in *Rivera [v. Allin]*, where no fundamental interest is at stake, "'Congress is no more compelled to guarantee free access to federal courts than it is to provide unlimited access to them.'" 144 F.3d [719, 724 (11th Cir. 1998)] (quoting *Roller [v. Gunn*, 107 F.3d 227, 231 (4th Cir. 1997)]). Because § 1915(g) does not infringe upon prisoners' fundamental rights and indigent prisoners are not a suspect class, the three-strike rule need only satisfy a rational basis test. *Harris [v. McRae*, 448 U.S. 297, 322 (1980)]. . . . We now hold that the PLRA's three-strike rule satisfies rational basis scrutiny. The three-strike rule was enacted to curtail the extraordinary costs of frivolous prisoners suits and minimize such costs to the taxpayers. *Madrid [v. Gomez*, 150 F.3d 1030, 1041 (9th Cir.1998)]. We have previously recognized that prisoners file a disproportionate number of frivolous suits. *Id*. We also recognized that prisoners file these suits because of "potential gains and low opportunity costs." *Id*. Congress has addressed the rising costs of defending against frivolous prisoner suits by limiting the number of suits they can bring for free. Requiring prisoners to pay filing fees for suits will force them to go through the same thought process non-inmates go through before filing a suit, *i.e.*, is filing this suit worth the costs? Budgetary concerns are a legitimate governmental interest and curbing the costs of defending against frivolous litigation is rationally related to maintaining the budget. Therefore, § 1915(g) satisfies the rational basis test.

*Rodriguez v. Cook*, 169 F.3d 1176, 1180–81 (9th Cir. 1999).

Plaintiff states, without any supporting facts or evidence, that his claims involve fundamental interests (with the implication being that they are therefore subject to a strict

scrutiny analysis and/or that they cannot be curtailed for failure to pay the filing fee). But fundamental interests are narrowly defined in this context and include the right to marry, the right to stave off parental status termination, and the right to liberty. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 121-24 (1996) (parental rights); *Boddie v. Conn.*, 401 U.S. 371, 374 (1971) (filing divorce proceedings); *Smith v. Bennett*, 365 U.S. 708 (1961) (habeas relief); *Burns v. State of Ohio*, 360 U.S. 252, 253 (1959) (criminal appeal). While these types of claims will be heard regardless of the litigant's ability to pay a filing fee, there is no constitutional right to IFP status when the claims merely challenge the conditions of confinement or assert other civil rights.[1]

**2. Certification to the Attorney General**

Plaintiff argues that his challenge to the constitutionality of 28 U.S.C. § 1915(g) warrants certification to the U.S. Attorney General under 28 U.S.C. § 2403. Section 2403 provides in relevant part:

> In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

---

[1] Plaintiff's assertion that indigent defendants cannot be pre-emptively barred from filing claims because there may be a non-frivolous constitutional claim alleged at some point in time is belied by his own litigation history. In 1991, the United States Supreme Court found that plaintiff's use of *in forma pauperis* filings was disrupting the orderly administration of cases to such an extent that IFP status would not only be denied in the matters then pending before the Court, but that he would also be denied leave to proceed IFP "in all future petitions for extraordinary relief." *In re Demos*, 500 U.S. 16 (1991). Two years later, the Supreme Court "direct[ed] the Clerk to reject all future petitions for certiorari from Demos in noncriminal matters unless he pays the docketing fee." *Demos v. Storrie*, 507 U.S. 290, 290–91 (1993). Plaintiff has not fared any better before the Ninth Circuit, which held that, "[i]n consideration of Demos' history, . . . he has abused the privilege of filing petitions *in forma pauperis* in this court" and barred him from filing "any new petitions seeking extraordinary writs pursuant to 28 U.S.C. §§ 1651, 2253, or 2254 directed at the United States District Courts for the Eastern and Western Districts of Washington." *Demos v. U.S. Dist. Ct. For E. Dist. of Wash.*, 925 F.2d 1160, 1161 (9th Cir. 1991).

ORDER OF DISMISSAL - 5

Fed. R. Civ. P. 5.1 implements the statute, going beyond the requirements of § 2403 to allow the Attorney General to make the determination of whether a particular challenge affects "the public interest." Fed. R. Civ. P. 5.1 advisory committee's note to 2006 amendment. The purpose of Rule 5.1 is to give the Attorney General a chance to intervene to defend the constitutionality of a statute before the Court declares it unconstitutional. "The court may[, however,] reject a constitutional challenge to a statute at any time." *Id*.

Where, as here, the Court finds at the outset that plaintiff's challenge to the constitutionality of 28 U.S.C. § 1915 lacks merit, the constitutionality is not drawn into question and there is no chance that the statute might be struck down before the Attorney General could intervene. There is therefore no reason to delay the issuance of this opinion for purposes of certification. Nevertheless, the Court will direct the Clerk of Court to serve a copy of this Order and plaintiff's complaint on the Attorney General of the United States, which will serve as notice that the constitutionality of 28 U.S.C. § 1915 may be drawn into question on appeal. The Court finds that belated certification will not prejudice or otherwise impair the ability of the United States to fully present its views on the question of the constitutionality of the relevant statutory sections should an appeal be taken. *In re Bloch*, 207 B.R. 944, 952 (D. Colo. 1997).

### 3. Applicability of 28 U.S.C. § 1915(g)

Plaintiff asserts that 28 U.S.C. § 1915 does not apply because plaintiff is not a prisoner. While it is true that "only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are "prisoners" within the definition of . . . . 28 U.S.C. § 1915," *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000), plaintiff has not alleged or provided evidence in support of his contention that he is being held "pursuant to a 'civil sex offender confinement statute.'" Dkt. # 4 at 32. *See* Dkt. # 1-1. Throughout his vast litigation history, plaintiff has been characterized as a prisoner subject to the PLRA. *See, e.g., Demos v.*

*Trump*, No. CV 24-04-M-DWM, 2024 WL 554307, at *2 (D. Mont. Feb. 12, 2024); *Demos v. Barker*, No. C22-1706JLR, 2023 WL 34548 (W.D. Wash. Jan. 3, 2023), appeal dismissed, No. 23-35027, 2024 WL 3337345 (9th Cir. Feb. 28, 2024); *Demos v. Washington State Att'y Gen.*, No. C19-0059-JCC, 2019 WL 13241074, at *1 (W.D. Wash. Aug. 13, 2019); *Demos v. Apple, Inc.*, No. 316CV02632LABBGS, 2016 WL 6600434, at *1 (S.D. Cal. Nov. 8, 2016). In the circumstances presented here, plaintiff fails to plausibly allege that he is not subject to the requirements and limitations of the PLRA.

### 4. Application of § 1915(g)

Demos asserts that he has filed "over 2,000 actions" in this and other courts around the country. He does not dispute that at least three of those civil actions were dismissed as frivolous or for failure to state a claim. Nor could he. Case law catalogues these dismissals, including, *inter alia*, *Demos v. Trump*, No. CV 24-04-M-DWM, 2024 WL 554307, at *1–2 (D. Mont. Feb. 12, 2024) (listing three such dismissals between 1994 and 2000), *Demos v. Keating*, 33 F. App'x 918, 920 n.1 (10th Cir. 2002) (listing four such dismissals in 1996 alone), and *Demos v. John Doe/Mfr./Skoal/Copenhagen Pipe & Tobacco*, 118 F. Supp. 2d 172, 173 (D. Conn. 2000) (listing nine such dismissals between 1982 and 1996).

In light of this abusive and frivolous litigation history, plaintiff may not proceed *in forma pauperis* unless he alleges that he is in "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Simply repeating the phrase "imminent danger" is insufficient: the factual allegations of the complaint must give rise to "a plausible allegation that [he] faced imminent danger of serious physical injury at the time of filing." *Andrews v. Cervantes*, 493 F.3d 1047 (9th Cir. 2007) (internal citations omitted). Even as supplemented in his second opposition memoranda, Dkt. # 5, his claims of harm arising from the seizure of legal documents, the refusal to provide legal envelopes, the attempt to read legal mail, the service of old and spoiled food, the refusal to order plaintiff's release or parole, and the recommendation that plaintiff be precluded from filing grievances within

ORDER OF DISMISSAL - 7

the prison system do not involve a risk of serious physical injury. Plaintiff's claims are therefore barred under the PLRA.

**C. Bar Order**

Plaintiff argues that the bar order issued by the Honorable Carolyn R. Dimmick in *In re John Robert Demos*, MC91-0269CRD (W.D. Wash. Jan. 1, 1992), is unlawful because it is an across-the-board denial of access to the courts which punishes plaintiff for being indigent. The "court has the inherent power to restrict a litigant's ability to commence abusive litigation *in forma pauperis*." *Demos v. U.S. Dist. Ct. For E. Dist. of Wash.*, 925 F.2d 1160, 1161 (9th Cir. 1991) (citing *In re McDonald*, 489 U.S. 180 (1989) (*per curiam*); *Visser v. Supreme Court*, 919 F.2d 113 (9th Cir. 1990)). The bar order was entered after reviewing plaintiff's litigation history, three proposed complaints, and the corresponding requests to proceed without paying the filing fee. Judge Dimmick expressly found that plaintiff's "filings have been frivolous and an abuse of the judicial system." *Id.* It was for that reason that plaintiff earned himself a bar order, not because of his indigency. Despite finding that plaintiff is an abusive litigant, Judge Dimmick did not bar him from the courthouse outright. Rather, he was allowed three IFP filings per year, but was expected to exercise judgment and discretion in choosing his targets: the bar order requires plaintiff to certify (1) that the claims presented had not been presented in any other action in any other court and (2) that plaintiff could and would produce evidence in support of the claims asserted.

Under the terms of the bar order, the doors of the courthouse are not closed to plaintiff, but they do require some effort on his part if he expects the judiciary to waive his filing fees. Plaintiff, however, is seemingly unwilling to make decisions regarding the merits of his cases, insists on filing anything and everything that comes to mind, refuses to do the homework necessary to determine whether he has already litigated a given claim, and cannot or will not save and utilize his own money to pay the filing fees. These factors

ORDER OF DISMISSAL - 8

do not bode well for the merits of his filings, and they show that the bar order is neither unreasonable nor unnecessary. *See Rodriguez*, 169 F.3d at 1180; *Scott v. Weinberg*, No. C06-5172 FDB, 2007 WL 963990, at *5 (W.D. Wash. Mar. 26, 2007).

The PLRA, which was enacted after Judge Dimmick issued the bar order described above, is in some ways more restrictive and in some ways less restrictive than the bar order. Under the PLRA, there is no yearly quota of IFP filings permitted to abusive litigants: once three filings are found to be frivolous or to have failed to state a claim upon which relief can be granted, all subsequent filings are forever barred except where plaintiff faces imminent danger of serious physical injury. Courts in this district have found that the bar order does not supersede the imminent danger exception of § 1915(g). *Demos v. Strange*, No. 2:22-cv-05464-TL-JRC (W.D. Wash. Aug. 3, 2022); *Demos v. Wash. State Dep't of Corrections*, No. 3:22-cv-05539-DGE-JRC, 2022 WL 4273353 (W.D. Wash. Sept. 15, 2022). The Court agrees. As discussed above, however, plaintiff has not plausibly alleged that the exception applies. In addition, his filing is separately subject to summary dismissal under the bar order for failure to make the required certifications.

//

//

//

ORDER OF DISMISSAL - 9

For all of the foregoing reasons, the Court finds that plaintiff's claims are barred by both the PLRA and the 1992 bar order.[2] The proposed complaint is therefore DISMISSED.[3] Plaintiff's motion to strike or quash the Report and Recommendation is DENIED. The Clerk of Court is directed to serve a copy of this Order and plaintiff's complaint on the Attorney General of the United States, which will serve as notice that the constitutionality of 28 U.S.C. § 1915 may be drawn into question on appeal.

Dated this 4th day of November, 2024.

Robert S. Lasnik
United States District Judge

---

[2] Plaintiff also asks a series of questions, such as "will a litigant be compelled to pay a filing fee when his case is dismissed at the screening stage" and "is the U.S. Constitution a rising sun, or a setting sun," without any explanation for how they apply or are relevant to the Court's review of the Report and Recommendation. Plaintiff similarly challenges the terms of a bar order entered in the Eastern District of Washington, which is not at issue here.

[3] The Court has not adjudicated the merits of plaintiff's claims and declines to determine whether the effect of the dismissal is with or without prejudice.

ORDER OF DISMISSAL - 10